UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL DIVERSITY,
378 N. Main Avenue
Tucson, AZ 85701,

    *Plaintiff*,

    v.

DEBRA HAALAND, *in her official capacity as Secretary of the U.S. Department of the Interior*,
1849 C Street NW
Washington, DC 20240,

    and

U.S. FISH AND WILDLIFE SERVICE,
1849 C Street NW
Washington, DC 20240,

    *Defendants*.

Case No.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1. Plaintiff Center for Biological Diversity ("the Center") challenges the Secretary of the Interior Debra Haaland and the U.S. Fish and Wildlife Service's (collectively "the Service" or "Defendants") failure to issue a timely 12-month finding on the Center's petition to list the blue tree monitor lizard (*Varanus macraei*) under the Endangered Species Act ("ESA"), 16 U.S.C.§§ 1531–1544.

2. The blue tree monitor lizard is gravely imperiled. Native to a single island in Indonesia and considered naturally rare, this striking, blue-hued lizard is threatened by the U.S. pet trade and destruction of its rainforest habitat. The International Union for Conservation of

Nature assessed the blue tree monitor lizard as endangered in 2017, fewer than 20 years after the lizard was first described by science.

3. The United States is the world's biggest importer of blue tree monitor lizards for the pet trade and is the major driver of the market.

4. Recognizing the serious threats blue tree monitor lizards face, on April 15, 2022, the Center petitioned Defendants to list the species as endangered under the ESA. If listed as endangered, the ESA would ban the import, export, and sale of blue tree monitor lizards in the United States, reining in the pet trade and giving this imperiled lizard a chance for recovery.

5. To ensure species' listings occur in a timely manner, the ESA sets strict deadlines for agency listing decisions. The ESA first requires the Secretary of the Interior, through the Service, to determine if listing "may be warranted" within 90 days of receiving a petition. 16 U.S.C. § 1533(b)(3)(A). If the Service makes such a finding, the ESA requires the Service to determine whether listing "is warranted" within 12 months of the petition's receipt, and if so, promptly propose and then later finalize the listing. *Id.* § 1533(b)(3)(B), (b)(6).

6. The Service found the Center's petition to list the blue tree monitor lizard "may be warranted" on August 17, 2023. 88 Fed. Reg. 55,991 (Aug. 17, 2023).

7. More than 18 months have passed since the Center submitted its blue tree monitor ESA listing petition.

8. Defendants have not issued the required 12-month finding on the Center's petition as of the date of this Complaint. As such, the Service is violating the ESA. Through this Complaint, Plaintiff seeks a declaratory judgment and injunctive relief to compel the Service to issue a 12-month finding on the Center's petition by a date certain, as well as fees and costs associated with this litigation.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction over this action pursuant to 16 U.S.C. § 1540(c) and (g)(1)(C) (actions arising under the ESA) and 28 U.S.C. § 1331 (actions arising under the laws of the United States). This action arises under the ESA, 16 U.S.C. §§ 1531–1544, and the requested relief is authorized under 16 U.S.C. § 1540(g) (ESA), 28 U.S.C. § 2201 (declaratory relief), 28 U.S.C. § 2202 (injunctive relief), and the Court's equitable powers.

10. The ESA provides a waiver of the federal government's sovereign immunity. 16 U.S.C. § 1540(g).

11. The Center sent a formal notice to Defendants of its intent to file suit under the ESA on August 22, 2023, more than 60 days prior to filing this Complaint, consistent with the ESA's statutory requirements. 16 U.S.C. § 1540(g)(2).

12. Defendant Debra Haaland, Secretary of the Interior, received a copy of the Center's notice letter via first-class, certified mail on September 1, 2023. Defendant U.S. Fish and Wildlife Service received a copy of the Center's notice letter, directed to Ms. Martha Williams, Director of the Service, via first-class, certified mail on September 1, 2023.

13. In a letter signed September 26, 2023, the Service indicated it "will complete [its 12-month] review as soon as possible," but the agency did not state a date by which the 12-month finding would be issued.

14. Defendants have not remedied their continuing ESA violations as of the date of this Complaint. Therefore, an actual controversy exists between the Parties under 28 U.S.C. § 2201.

15. Venue in this Court is proper under 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e)(1) because Defendants reside and are headquartered in this judicial district and a

substantial part of the events, omissions, and violations giving rise to the claim occurred in this district.

## PARTIES

### Plaintiff

16. Plaintiff Center for Biological Diversity ("the Center") is a 501(c)(3) nonprofit corporation incorporated in the State of California. The Center maintains offices across the country, including in Washington, DC; California; Arizona; and Oregon; and in Baja California Sur, Mexico. The Center works through science and environmental law to advocate for the protection of endangered, threatened, and rare species and their habitats. The Center's International Program works to protect global biodiversity by using U.S. and international law to protect imperiled species wherever they are found around the globe. In pursuit of its mission, the Center has been actively involved in seeking and securing protections for species abroad, including blue tree monitors and other lizards, fish, frogs, and turtles in the pet trade. The Center has more than 84,000 active members and approximately 1.7 million online activists living both in the United States and other nations.

17. The Center and its members derive professional, scientific, educational, recreational, conservation, aesthetic, and other benefits from blue tree monitor lizards in the wild. The Center has members who have concrete plans to visit blue tree monitor lizard habitat in Indonesia to view the species. Plaintiff also has members who regularly visit wildlife markets to attempt to observe and document wildlife offered for sale, including blue tree monitors, other lizards, and other animals in the pet trade.

18. For example, Mr. Brett Hartl is a Center member and avid world traveler who looks for, photographs, and records videos of wildlife both in the United States and abroad. Thus

far, Mr. Hartl has observed 600 species of mammals, 4,100 species of birds, and numerous other species around the world, and he has a life goal of seeing many more.

19. Mr. Hartl has visited Indonesia three times, returning from his most recent trip in June 2023. During these trips, Mr. Hartl visited different parts of Indonesia, often with local guides, to observe and attempt to observe rare and interesting species, including birds, mammals, reptiles, and corals. Mr. Hartl has concrete plans to return to Indonesia in the summer of 2025, flying into the West Papua city of Sorong, near Batanta, the island inhabited by the blue tree monitor lizard. Mr. Hartl plans to visit Batanta where he will attempt to observe the blue tree monitor lizard and other species.

20. Defendants' violations have directly, adversely, and irreparably harmed the Center and its members' interests in the blue tree monitor lizard. This harm is ongoing and will continue unless and until this Court provides the relief prayed for in this Complaint. The Center's members are less likely to observe blue tree monitor lizards in the wild, as the species continues to decline without ESA protections.

21. The relief sought in this Complaint would redress Plaintiff's injuries. ESA listing would provide blue tree monitor lizards with important protections and benefits. The ESA generally bans the import, export, and sale of endangered species in interstate and foreign commerce, 16 U.S.C. § 1538(a), and requires the Service to issue regulations deemed "necessary and advisable" for the conservation of threatened species, *id.* § 1533(d). The ESA also provides for "international cooperation" in the conservation of listed foreign species. *Id*. § 1537. ESA listing increases awareness of listed species and their threats; stimulates research efforts to address conservation needs; and increases funding for conservation of species in their range countries, including habitat conservation. Under the ESA, the Service provides financial

assistance for programs to conserve listed species in foreign countries, encourages conservation programs for such species, and offers other related assistance, such as personnel and training.

22. Therefore, the Center and its members are injured by Defendants' failure to make a timely 12-month finding on the Center's petition to list the blue tree monitor lizard under the ESA. Defendants' protracted failure prevents the application of the ESA's substantive protections that are vitally important to the blue tree monitor's survival and eventual recovery. These are actual, concrete injuries presently suffered by the Center and its members. These injuries are directly caused by Defendants' acts and omissions, and they will continue to occur unless the Court grants relief. The Center and its members have no other adequate remedy at law.

## Defendants

23. Defendant Debra Haaland is the Secretary of the U.S. Department of the Interior. In this capacity, Secretary Haaland directs all business of the Department of the Interior. Pursuant to the ESA, Secretary Haaland is responsible for determining whether species are endangered or threatened and for promulgating regulations to list and protect those species. In her official capacity, Secretary Haaland is responsible for the violations alleged in this Complaint.

24. Defendant U.S. Fish and Wildlife Service ("the Service") is an agency within the Department of the Interior. The Secretary of the Interior has delegated to the Service the authority to administer the ESA for many species of wildlife, 50 C.F.R. § 402.01(b), including the responsibility of complying with the ESA's mandatory listing deadlines. This authority encompasses proposed and final listing decisions for blue tree monitor lizards.

## FACTUAL AND STATUTORY BACKGROUND

**A.     Blue Tree Monitor Lizards**

25.     Blue tree monitor lizards (*Varanus macraei*) are arboreal lizards endemic to the island of Batanta and surrounding islets in Indonesia's West Papua province.

26.     Measuring about three feet long, this unique lizard is mostly gray to black with bright blue spots and markings along its head, body, and tail.



*A Blue Tree Monitor Lizard. Source: PMillera*

27.     Considered naturally rare, the blue tree monitor lizard's small population size and limited range make it particularly susceptible to threats.

28.     The international pet trade is the biggest threat to the blue tree monitor lizard. The species' rarity in the wild and distinctive blue hue have made it particularly popular and, as a result, expensive in the trade.

29.     The blue tree monitor lizard was protected under the Convention on International Trade in Endangered Species ("CITES") in 1975 through inclusion of the species on Appendix II. CITES regulates but does not foreclose international trade in Appendix-II species. Under CITES, a trade database is maintained, recording data on all international trade in CITES-listed

species, as reported by nations that are parties to the convention. The database shows that 5,329 blue tree monitor lizards were exported between 2003 and 2020.

30. In 2021 alone, there were 71 reported exports of blue tree monitor lizards from Indonesia to the United States.

31. The United States is the largest importer of blue tree monitor lizards worldwide, importing more than the following top three importing nations combined. The United States is the major driver of the blue tree monitor lizard trade.

32. Most blue tree monitor lizard exports in the CITES database are marked as captive-bred.

33. However, there are no documented, successful, captive-breeding facilities for this species in Indonesia, the primary export nation. Blue tree monitor lizards are difficult to successfully breed in captivity. A recent scientific paper documented the challenges in breeding blue tree monitor lizards in captivity in Indonesia and the low likelihood of survival of captive-bred individuals, with a clutch of six eggs resulting in only one individual surviving beyond two months.

34. It is likely that many of the blue tree monitor lizards exported from Indonesia were harvested from the wild but inaccurately marked as captive-bred. Laundering of wild caught reptiles as "captive-bred" occurs in Indonesia.

35. Once captured, there is high mortality along the trade chain as animals can wait weeks before being sold and exported to destination countries.

36. Blue tree monitor lizards are advertised for sale in the United States.

37. In October 2023, the retail prices in online advertisements ranged from U.S. $400–$6,200 for an individual blue tree monitor lizard.

38. Blue tree monitor lizards are also threatened by habitat loss. Rainforests in Indonesia are increasingly threatened by deforestation and land conversion, including on Batanta Island.

39. The International Union for Conservation of Nature assessed the species as endangered in 2017, finding it is facing a very high risk of extinction in the wild.

40. The blue tree monitor lizard has the smallest range of all 84 currently known species of monitor lizards (family *Varanidae*), consisting of roughly 430–455 square kilometers on Batanta Island and nearby offshore islets in the Raja Ampat Archipelago, which are located in Indonesia's West Papua province.

41. Because blue tree monitor lizards are listed under CITES Appendix II, export of the species requires a permit from exporting nations, and the nation must also issue a finding that "export will not be detrimental to the survival of th[e] species" and the specimen was not obtained illegally. CITES Art. IV(2)(a), (b).

42. However, scientists have stated that there is no science-based, socio-economic model in place for generating adaptive management plans that ensure take of many species of monitor lizards is not detrimental.

43. Moreover, illegal wildlife trade in Indonesia is rampant. As one paper states, "[m]ost wildlife trade in Indonesia is illegal, yet enforcement is almost non-existent."

44. ESA protections are urgently needed to protect the blue tree monitor lizard from further decline.

**B.   Role of the Pet Trade in Contributing to Reptile Extinctions**

45. Globally, reptiles are understudied; likely 30 percent of reptile species have not yet been assessed by the International Union for Conservation of Nature.

46. Many reptiles are significantly impacted by the pet trade. Populations of reptiles around the globe have been extirpated due to collection for trade. Numerous reptile species have suffered population declines due to overcollection for the pet trade.

47. Rare species and species that are newly identified tend to be in demand such that the pet trade can rapidly deplete such species, at times even before protections can be enacted.

### C. The Endangered Species Act

48. Recognizing that endangered and threatened species are of "esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people," Congress enacted the ESA in 1973 "to provide a program for the conservation of" these species. 16 U.S.C. § 1531(a)(3), (b).

49. To this end, Section 4 of the ESA requires the Secretary of the Interior to determine whether any species is "endangered" or "threatened," and if so, list the species under the ESA. 16 U.S.C. § 1533(a), (c). The Secretary has delegated her administration of the ESA to the Service. 50 C.F.R. § 402.01(b).

50. An endangered species is any species that "is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A threatened species is any species that "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

51. The Service must list a species if it is endangered or threatened due to "(A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence." 16 U.S.C. § 1533(a)(1). The Service must

make listing determinations "solely on the basis of the best scientific and commercial data available . . . after conducting a review of the status of the species." *Id.* § 1533(b)(1)(A); 50 C.F.R. § 424.11(b).

52.     Once a species is listed under the ESA, prescribed protections apply.

53.     Section 7(a) of the ESA requires that each federal agency "shall . . . utilize [its] authorities . . . [to] carry[ ] out programs for the conservation" of listed threatened and endangered species. 16 U.S.C. § 1536(a)(1). The same section also requires that each federal agency "shall" consult with the relevant expert agency (for blue tree monitor lizards, the Service) to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence" of a listed species. *Id.* § 1536(a)(2).

54.     Section 9 of the ESA generally prohibits the "take" of any endangered species within the United States without authorization from the Service. 16 U.S.C. §§ 1538(a)(1)(B), 1539. Section 9 also prohibits the import, export, transport, and sale of any endangered species in interstate or foreign commerce. *Id.* § 1538(a)(1)(A), (E), (F).

55.     For threatened species, Section 4(d) specifies that the Service "shall issue such regulations as [it] deems necessary and advisable to provide for the conservation of such species" and may extend any of the prohibitions in Section 9 to the species. 16 U.S.C. § 1533(d).

56.     The ESA also authorizes the Service to provide financial and other assistance for programs that conserve foreign ESA-listed species. 16 U.S.C. § 1537(a), (c). The ESA further authorizes and directs the Service through the U.S. Secretary of State to encourage foreign nations to conserve listed species and enter the United States into treaties and other agreements to provide for such conservation. *Id.* § 1537(b)(1), (2).

57. To ensure the timely protection of species that are at risk of extinction, Congress established a detailed, time-bound process whereby citizens may petition the Service to list a species as endangered or threatened and the Service must respond.

58. Specifically, "[t]o the maximum extent practicable, within 90 days" of receiving a listing petition, the Service must make an initial "finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). The finding is referred to as a "90-day finding."

59. If the Service determines that listing may be warranted, it must conduct a full scientific review of the species' status. 16 U.S.C. § 1533(b)(3)(A). Then, within 12 months of receiving the petition, the Service must make one of three findings: (1) listing is "warranted;" (2) listing is "not warranted;" or (3) listing is "warranted but . . . precluded" by other pending listing proposals, provided certain requirements are met. *Id.* § 1533(b)(3)(B). The finding is referred to as a "12-month finding."

60. If the Service's 12-month finding concludes that listing is warranted and not precluded, the agency must "promptly publish" a proposed regulation to list the species as endangered or threatened in the Federal Register for public comment. 16 U.S.C. § 1533(b)(3)(B)(ii). Within one year of publication of the proposed regulation, the Service must render its final determination on the proposal. *Id.* § 1533(b)(6)(A). At such time, the Service must either list the species, withdraw the proposed listing rule, or, if there is substantial disagreement about scientific data, delay a final determination for up to six months to solicit additional scientific information. *Id.* § 1533(b)(6)(A)(i), (B)(i).

61. The ESA authorizes the Service to emergency list a species for 240 days, bypassing the standard ESA and Administrative Procedure Act rulemaking requirements, when

there is an "emergency posing a significant risk to the well-being of any species of fish or wildlife or plants." 16 U.S.C. § 1533(b)(7). Following public notice and comment, the species can then be listed on a non-emergency basis. *Id*.

62. The ESA's strict protections do not safeguard species at risk of extinction until the Service lists the species as endangered or threatened. Accordingly, it is critical that the Service strictly comply with the Act's listing procedures and deadlines to ensure species are listed in a timely manner.

63. The Service has issued a series of workplans, documenting as non-binding timelines the fiscal year in which the agency intends to take listing actions for foreign species, including 12-month findings and proposed listing rules.

64. The Service issued a foreign species workplan in 2020. In fall 2021, the Service issued a revised foreign species workplan that, among other things, pushed back the Service's non-binding timelines for completing listing actions for several species. The Service issued its current workplan in June 2023 in which it further delayed its non-binding timelines for completing listing actions.

**D.     Plaintiff's Petition and Defendants' Failure to Meet ESA Deadlines**

65. Recognizing the perils blue tree monitor lizards face due to overutilization, international trade, habitat destruction, and inadequate regulatory mechanisms, the Center submitted a petition on April 15, 2022, to list the blue tree monitor lizard under the ESA.

66. The petition included a request that the Service emergency list the blue tree monitor lizard due to its small population size, rarity, and the demand for this unique and newly identified species as pets, especially in the United States.

67.     The Service issued a positive 90-day finding on Plaintiff's petition to list the blue tree monitor lizard on August 17, 2023, finding the species' listing "may be warranted." 88 Fed. Reg. 55,991, 55,994 (Aug. 17, 2023).

68.     The Service did not emergency list the blue tree monitor lizard.

69.     More than 18 months have passed since the Center filed its petition to list the blue tree monitor lizard. The Service has not issued the required 12-month finding on the petition to date.

## CLAIM FOR RELIEF

### Violation of the Endangered Species Act

70.     Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though fully set forth below.

71.     Defendants' protracted and ongoing failure to make the statutorily required, timely 12-month finding on the Center's petition to list the blue tree monitor lizard as endangered violates the Endangered Species Act. 16 U.S.C. § 1533(b)(3)(B).

## REQUEST FOR RELIEF

The Center respectfully requests this Court:

A.      Declare that Defendants have violated and continue to violate the ESA by failing to issue a 12-month finding on whether listing the imperiled blue tree monitor lizard under the ESA is warranted, 16 U.S.C. § 1533(b)(3)(B);

B.      Order Defendants to issue, by a date certain, a finding as to whether listing the blue tree monitor lizard under the ESA is warranted, 16 U.S.C. § 1533(b)(3)(B);

C.      Award the Center its attorneys' fees and costs in this action as provided by the ESA, 16 U.S.C. § 1540(g)(4);

  D. Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein; and

  E. Provide such other and further relief this Court deems just and proper.


Dated:  November 2, 2023       Respectfully submitted,

                */s/ Tanya Sanerib*
               Tanya Sanerib
               DC Bar No. 473506
               Center for Biological Diversity
               1037 NE 65th Street, #128
               Seattle, WA 98115-6655
               (206) 379-7363
               tsanerib@biologicaldiversity.org

               Sarah Uhlemann
               DC Bar No. 501328
               Center for Biological Diversity
               1037 NE 65th Street, #128
               Seattle, WA 98115-6655
               (206) 327-2344
               suhlemann@biologicaldiversity.org

               *Attorneys for Plaintiff Center for Biological Diversity*